J. ADALBERTO ROIG, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. R-64-130.        Decided April 26, 1965.

*James R. Beverley, Rafael Castro Fernández,* and *William Estrella* for appellant. *J. B. Fernández Badillo, Solicitor General, Irene Curbelo,* and *Elpidio Arcaya, Assistant Solicitors General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The taxpayer in the case at issue insisted on not deducting as interest in the amount of $89,912.10 on his 1965 income tax return while the Secretary of the Treasury demanded that such deduction be made. This is a rare case with regard to the traditional position of taxpayer and the Public Treasury. The situation, strange as it may seem, is explained as follows:

The Superior Court, San Juan Part, imputed tax deficiencies to the taxpayer for the years 1941 to 1947. As a consequence, and in order to satisfy the jurisdiction of this Supreme Court, the taxpayer sent the Secretary of the Treasury, on May 5, 1955, a communique which read as follows:

"Enclosed is check No. H-1920 payable to your order in the amount of $266,511.06 issued by Antonio Roig, *Sucrs., S. en C.,* in payment of the deficiencies due and owed by J. Adalberto Roig which, according to the computation recorded in case No. I-134, are as follows:" (The deficiencies are detailed.)

Of the amount of $266,511.06, $89,912.10 corresponded to interest on the deficiencies.

The taxpayer deducted from his gross income the aforementioned interest on his 1955 income tax return with the result that his net income was $26,151.62 and his tax was $8,712.19. Subsequently, the taxpayer filed, on July 24, 1958, a 1955 amended return, explaining that the only change was the elimination of the interest deduction in the amount of $89,912.10. As a consequence of the waiving of this deduc-

tion, the 1955 tax increased from $8,712.19 to $72,416.18.

Why the taxpayer preferred to pay this greater tax for the year 1955 is explained by the mechanism of the tax adjustment and balance created by § 58 to § 60A of the 1954 Income Tax Act—Act No. 91 of June 29, 1954—in connection with the 1954 and 1955 taxable years. The operation of adjustments and the tax situation between those two years, which provide a relief for certain taxpayers electing to file estimated returns for 1955, as well as the legislative history and the prevailing financial reasons were recently explained by us (speaking for the Court) in *Quiñones Sambolín* v. *Secretary of the Treasury*, 91 P.R.R. 74 (1964), where, for the first time, we had the opportunity of considering those provisions of the 1954 Act. There is no need to repeat what is stated therein. We refer you to the above-cited case. It is sufficient to recall that, for every taxpayer electing to file estimated tax returns, the law provided remittance, as a measure of relief, of the 1954 tax up to an amount not in excess of the 1955 tax. Regarding the non-remitted excess an extended 18-month period was granted to the taxpayer beginning on the date of the termination of his 1954 taxable year, also as a relief for the payment of such excess without interest, penalties or any additions.

The taxpayer, for the year 1954, was obliged to pay a $98,204.33 tax. A deduction of $8,712.19, representing the 1955 tax according to the original return, was made resulting in a difference of $89,492.14 which, with the corresponding interest of $49,332.55, amounted to a total tax of $138,824.69.

For his 1955 taxable year the taxpayer paid, by an estimated return, the amount of $92,539.70. After deducting $8,712.19, which represented the 1955 tax (a difference of $88,827.51 resulted in favor of the taxpayer which, with the interest, amounted to $91,958.78. This amount was granted to the taxpayer for his 1954 tax.

We have already stated that, for the year 1954, there was a $98,204.33 tax. According to the original return, and in compliance with § 60A (b) of the law, the amount of $8,712.19 for 1955 was remitted, leaving an unpaid tax for 1954 in excess of the 1955 tax in the amount of $89,492.14. According to the amended return, and by eliminating the interest deduction the amount of $72,416.18 is due from the $98,204.33, the 1954 tax. This results in unremitted tax for the year 1954 in the amount of $25,788.15 instead of the $89,492.14 tax which, with interest, amounts to $138,824.69. This explains why the taxpayer amended his 1955 income tax return and insisted on not deducting the interest, and shows why the Secretary of the Treasury disagreed. In crediting the amount of the 1955 excess payment—$91,958.28—to the sum of $138,824.69, the 1954 tax, there resulted a $46,865.91 deficiency instead of another credit. With certain adjustments the litigated deficiency notified was $33,406.61.

These are the taxpayer's financial reasons for changing his deduction of the abovementioned interest paid on March 5, 1955, thereby increasing the amount of the tax to be remitted in 1954 from $8,712.19 to $72,416.18. The taxpayer's legal reason for eliminating the $89,912.10 deduction from his 1955 income-tax return is that the $266,511.06 paid by him on May 5 of that year constituted the deposit or bond required before an appeal to the Supreme Court of the Superior Court sustaining the tax could be taken. Therefore, since this amount did not constitute a tax payment the interest was not deductible in law.

■ Section 272 (b) (2)[1] provides that when a taxpayer appeals from the judgment of the Superior Court ruling on a tax deficiency, he shall be obliged *to pay* in full the total deficiency so determined within the appeal period. Failure

---

[1] 13 L.P.R.A. § 3272 (1962 ed.), as amended by Act No. 27 of May 23, 1963.

to comply with this requirement, except as provided, shall deprive the Supreme Court of the power to consider the appeal on its merits. A similar payment requirement existed under the 1924 law. However, the 1954 Act provides, as the result of a complete legislative reexamination made in connection with bond and tax payment provisions, that in order for a taxpayer to be entitled to judicial remedy when he is unable *to pay* the deficiency or is able only to pay part thereof, the Superior Court may order that the appeal follow its course until final determination on its merits without requiring payment of the total amount of the deficiency. Should the Superior Court determine that the taxpayer is able to pay the deficiency, or part of it, or that he *should file a bond*, the taxpayer should proceed to pay the deficiency, or the part so determined by the Court, or file the bond. Compliance with this requirement will perfect the appeal.

Historically, in cases of deficiencies the filing of a bond, not the payment, has been required in order to invoke jurisdiction at the Superior Court level. Traditionally, *payment* has always been required to invoke jurisdiction at the Supreme court level. This mechanism, which relieves the taxpayer from filing a bond in order to appeal before the Superior Court and from paying the tax in order to appeal to the Supreme Court, was established by the 1954 Act.

■ Obviously, in the case at issue and according to the record, the taxpayer did not make a deposit or file a bond when he paid, on May 5, 1955, the amount and interest of the deficiencies as determined by the Superior Court. Rather, he made a payment. The taxpayer forgets, in his position before us, that there is nothing in the record to show that the Superior Court concluded that a bond is permitted instead of a payment, a conclusion which leads to the determination of whether or not the taxpayer may or may not pay the tax.

There is also the unquestionable fact that when this Court reversed the Superior Court[2] the Public Treasury refunded the taxpayer the amount of $266,511.06 which was paid in order to appeal to the Supreme Court, plus the amount of $121,727.28 as interest thereon. If the taxpayer insists that he filed a bond or made a deposit on May 5, 1955, notwithstanding the terms of his letter to the Secretary, he should have refused, according to this criterion, the amount of $121,272.28 paid to him as interest on his payment. There is no offering either by the taxpayer in the record of the Superior Court or in our records of a refund of this interest to the Public Treasury as an act of reconciliation in connection with the two positions assumed.

The judgment rendered by the Superior Court, San Juan Part, on March 3, 1964, dismissing the complaint will be affirmed.

---

[2] *Roig* v. *Secretary of the Treasury*, 84 P.R.R. 141 (1961).